## BROWN v. PECHMAN.

MARRIED WOMEN—INHERITANCE.—The act of 1795 (5 Stat., 257), prescribing the manner in which a married woman should release her inheritance in real estate by deed, was not repealed by the Constitution of 1868, and not by express legislation until 1873 (15 Stat., 324).

Before TOWNSEND, J., Barnwell, March, 1897. Reversed.

Action by Elizabeth A. Brown against Charles F. Pechman. The following is the Circuit decree:

This case was heard by the Court upon an agreed statement of facts, jury trial being expressly waived. The plaintiff inherited the land in question from her brother prior to 1860, and on the 5th June, 1869, she, together with her husband, James C. Brown, joined in a deed of conveyance to their son, Pinckney Brown, the same being in form a fee simple title deed of conveyance. On the 23d day of June, A. D. 1869, Mrs. Brown, the plaintiff, appears to have renounced her inheritance before a magistrate. In this attempt to renounce her inheritance, it is not stated that seven days before she joined her husband in the execution of the deed, as required by the third section of the act of 1795, 5 Stat., p. 257. This defect, it is conceded, would have been fatal to the deed prior to the Constitution of 1868, and the grantee would have taken no valid title to the land; but it was urged upon behalf of the defendant that the eighth section of the fourteenth article of the Constitution of 1868 did away with the necessity for a married woman to renounce her inheritance at all, or, in other words, operated as a practical repeal of the act of 1795 in this regard; and that she having joined her husband in the deed, all that was necessary to pass a good title to their grantee was done. I concur in this view of the case, and hold that the deed from J. C. Brown and E. A. Brown to Pinckney Brown, of date 5th June, 1869, conveyed to him a good title to the land in question, and that he and his assigns, one of whom is the defendant, held the land freed and discharged of all

claims of the plaintiff. It is, therefore, ordered and adjudged, that the complaint be, and hereby is, dismissed with costs.

From this decree the plaintiff appeals.

*Messrs. Bellinger, Townsend* and *O'Bannon,* for appellant, cite: Con. 1868, sec. 8, art. 14; 5 Stat., 257; 16 S. C., 96; 15 S. C., 593; 14 Stat., 326; 15 Stat., 324; 14 S. C., 191; 41 N. E., 895; 26 S. C., 337; 48 S. C., 149.

*Mr. Robert Aldrich,* contra, cites: Con. 1868, sec. 8, art. 14; 15 Stat., 257; 11 S. C., 71; 33 S. C., 264; 16 S. C., 96; 15 S. C., 91; 17 S. C., 326; 15 S. C., 593; 18 S. E. R., 995; 26 S. C., 217.

July 12, 1897. The opinion of the Court was delivered by

MR. CHIEF JUSTICE MCIVER. The only question presented by this appeal is, whether the Circuit Judge erred in holding that the act of 1795, prescribing the mode by which a married woman should release her estate of inheritance in real estate, was repealed by the Constitution of 1868. Let the decree of the Circuit Judge be incorporated in the report of the case.

The Circuit Judge concedes, and properly concedes, under the case of *Wingo* v. *Parker,* 19 S. C., 9, and the authorities there cited, that the paper relied on as a release of the plaintiff's right of inheritance would have been fatally defective prior to the Constitution of 1868, as an insufficient compliance with the express provisions of the act of 1795; but he held that the Constitution of 1868 operated as a repeal of the act of 1795, and hence dispensed with the necessity for any formal release of inheritance. In this there was error.

It is quite certain that the legislature never regarded the act of 1795 as repealed by the Constitution of 1868, for the provisions of that act were, in terms, incorporated in sections 5, 6, and 7 of the 83d chapter of the Revised Statutes of 1872. And it was not until January, 1873, 15 Stat., 324, that those sections were expressly repealed. In the mean-

time, the act of 1870, 14 Stat., 325, which was likewise incorporated in the Revised Statutes of 1872 as sec. 2 of chap. C., was passed, by which it was provided that "a married woman shall have power to bequeath, devise or convey her separate property in the same manner and to the same extent as if she were unmarried; * * * and all deeds, mortgages, and legal instruments of whatever kind shall be executed by her in the same manner, and have the same legal force and effect, as if she were unmarried." It will thus be observed that the provisions of the act just quoted from are broader than the provisions of sec. 8 of art. XIV. of the Constitution of 1868, which declares that "The real and personal property of a woman held at the time of her marriage, or that which she may thereafter acquire, * * * shall be held as her separate property, and may be bequeathed, devised or alienated by her the same as if she were unmarried." For while the Constitution confers upon a married woman *the power* to bequeath, devise or alienate her separate property, it makes no provision as to how such power shall be exercised. But in the act of 1870, provision is made as to how such power shall be exercised, to wit: "*in the same manner* and to the same extent as if she were unmarried." It seems to us, therefore, that the real object and true purpose of the constitutional provision above referred to was simply to relieve the property of the wife from liability for her husband's debts, and to invest her with *the power* to dispose of the same, which could only be exercised in the manner then prescribed by law, to wit: in the manner required by the provisions of the act of 1795, until that act was expressly repealed by the act of 1873, above referred to, or at least until, by the provisions of the act of 1870, above cited, the act of 1795 was impliedly repealed by the provision in that act, directing that all deeds, &c., executed by a married woman "shall be executed by her *in the same manner*, and have the same legal force and effect, as if she were unmarried." This view is in accordance with the case of *Townsend* v. *Brown*, 16 S. C., 91, where it is said:

"Even if it should be conceded that the object and effect of this clause of the Constitution was to make a married woman *sui juris* in all respects, we see no reason why the legislature might not require a privy examination of the wife, as evidence of the fact that she had really signed the deed, just as it might require the deed of a corporation or partnership to be executed with certain formalities, as the only conclusive evidence of the fact that such deed was, in fact, the deed of the corporation or partnership." It seems to us, therefore, that until the provisions of the act of 1795 were repealed, either expressly or by necessary implication, the deed of a married woman, purporting to convey her estate of inheritance, was ineffective, unless the provisions of that act were complied with—which it is conceded was not done in this case. We do not see how the provisions of the Constitution of 1868 can be regarded as a repeal of the act of 1795. There certainly was no express repeal; and the well settled rule is, that repeals by implication are not favored. To operate such a repeal, it must be *necessarily* implied. If the two provisions can stand together, no repeal can be implied. We do not see how there is any conflict between the constitutional provision, which simply confers upon a married woman the same *power* to convey her property as is enjoyed by an unmarried woman, and the statutory provision prescribing *the manner* in which such power shall be exercised by a married woman.

Inasmuch as the so-called release of inheritance here relied upon was executed on the 23d of June, 1869, prior to the passage of the act of 1870, and, of course, prior to the passage of the act of 1873, above referred to, it cannot be regarded as effectual to convey the plaintiff's estate of inheritance, because not in compliance with the provisions of the act of 1795, which was the law in force at the time the so-called release of inheritance was executed.

The judgment of this Court is, that the judgment of the Circuit Court be reversed, and the case remanded to that Court for a new trial.

MR. JUSTICE POPE did not sit in this case.